*230 OPINION OF THE COURT
Hancock, Jr., J.
Plaintiff, the owner of an apartment building, contracted with defendant to do some corrective work. A fire broke out causing extensive damage not only to portions of the building covered by the contract but to other areas as well. Plaintiffs insurer paid plaintiff for the full extent of the damage, and in this negligence action, suing in the name of plaintiff as its subrogee, seeks reimbursement for its loss. The narrow issue in this appeal, requiring an interpretation of the subrogation waiver clause in the agreement between plaintiff owner and defendant contractor, is whether that clause bars the subrogation claim for damage to those portions of the building not included in the Work under the contract. For reasons stated hereafter, we agree with the Appellate Division that the waiver clause applies only to damage to the areas within the limits of "the Work” and that, therefore, the subrogation claim is, except for such damages, not barred. Accordingly, there should be an affirmance.
I
Plaintiff, the owner of Carnegie Towers in Manhattan, contracted with defendant, a waterproofing contractor, to do certain corrective work on the exterior of the building and the parking garage floor. The relevant provisions of the contract, a standard American Institute of Architects (AIA) form contract for "construction projects of limited scope”, are these.
Under article 1 (the Work), the specific work required to be performed is described as follows: "Corrective Work to the Masonry and Concrete Portions of Exterior Walls and the Parking Garage Floor Slab for Carnegie Towers 115 East 87th Street New York, New York”.
The general provision describing the Work, set forth in article 7.4, is as follows: "The Work comprises the completed construction required by the Contract Documents and includes all labor necessary to produce such construction, and all materials and equipment incorporated or to be incorporated in such construction.”
*231 Under article 17 (Insurance) the following provisions are pertinent:
Article 17.1 requires that the contractor purchase and maintain: "liability insurance * * * to protect [it] * * * from claims for damages, other than to the Work itself, to property which may arise out of or result from the Contractor’s operations under this Contract” (emphasis supplied).
Article 17.3 requires that the owner: "purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of fire” (emphasis supplied).
Article 17.6 provides: "[t]he Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Article or any other property insurance applicable to the Work” (emphasis supplied).
On May 24, 1984, a fire started in a shed constructed by defendant on a fifth-floor terrace, causing approximately $140,000 in damages to the interior hallways, apartments and to the exterior of the building. Seven months after the fire, plaintiff was paid $139,351.74 for the loss by its property insurer which has brought this action as subrogee to recover its loss from defendant. Defendant, in turn, has commenced a third-party action against its subcontractor, Coyne Electrical Contractors.
Relying on the waiver provision contained in article 17.6, defendant moved to dismiss the complaint. Supreme Court granted defendant’s motion and, sua sponte, dismissed the third-party action, citing Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp. (106 AD2d 242, affd for reasons stated below 66 NY2d 779). The Appellate Division, with one Justice dissenting, modified on the law by reinstating the complaint to the extent that it seeks damages for losses to portions of the building not included in the contractual work and reinstated the third-party complaint. The Appellate Division distinguished Trump-Equitable and held that, under the contract here, plaintiff was required to obtain coverage only for "the Work” and that "[a]ny other coverage the owner may have had for the property was not, by the terms of [article] 17.6, subject to the waiver of subrogation therein” (153 AD2d, at 478). The Appellate Division certified to this court the ques *232 tion: "Was the order of the Supreme Court, as modified by this Court, properly made?” We answer the question in the affirmative.
II
Our decision turns on a construction of article 17.6 in the contract in which the owner agreed to waive all rights against the contractor for damages caused by fire "to the extent covered by insurance obtained pursuant to this Article or any other property insurance applicable to the Work”. The question is: Does the owner’s waiver under article 17.6 bar the subrogation claim of its insurer for damages caused by the contractor in areas of the building outside the limits of the Work?
In addressing the legal issue of what the parties intended, we note that we are dealing with a commercial construction contract between business entities. The owner and contractor in article 17.6 (the waiver clause), article 17.1 (requiring the contractor to insure its potential liability for non-Work property damage) and article 17.3 (requiring the owner to provide property insurance for the contractor’s Work) have agreed upon an allocation of their respective responsibilities, risks and insurance obligations pertaining to the possibility of property damage occurring during the contract and to the contractor’s potential liability stemming from its operations. Neither party claims that the contract is ambiguous nor raises any claim of misunderstanding, overreaching or unconscionability. No policy consideration or other reason has been suggested why the parties should not abide by their agreed-upon allocation of the risks and responsibilities, once the meaning of their agreement has been determined (see, Gillman v Chase Manhattan Bank, 73 NY2d 1, 14; Kalisch-Jarcho, Inc. v City of New York, 72 NY2d 727, 732; Simons v Fried, 302 NY 323, 324).
The allocation of the risks and responsibilities, according to plaintiff, is that the owner must provide property insurance protection covering the contractor’s Work (art 17.3) and the contractor, in turn, must provide liability insurance covering whatever property damage it may cause other than to the Work itself (art 17.1). The waiver clause (art 17.6), plaintiff says, permits the owner’s insurer to proceed against the contractor for property damage caused by its negligence but not for damage covered by insurance which the owner has *233 provided to protect the contractor’s interest — i.e., damage resulting to the contractor’s Work. As to such damage, there can be no subrogation. In the event of a loss, such as the one here, involving fire damage to the Work and areas beyond the Work, the damages may be shared between the owner’s insurer (which is responsible for so much of the damage as occurs to the Work) and the contractor’s liability insurer (which, assuming there is liability, must bear ultimate responsibility for damages outside the Work).
The agreement, as the defendant and third-party defendant view it, allocates a greater share of the risk and responsibilities to the owner and ultimately to the owner’s insurer. Under their construction, the waiver clause (art 17.6) prevents the owner’s insurer from proceeding against the contractor for its negligence not only for damage occurring to the Work but to other areas of the building, provided that the damage "arose out of, or was related to, the Work itself.” (Brief of third-party defendant, at 13.) Thus, in the event of a fire arising out of the contractor’s operations which results in damage both to the Work and areas outside the Work, the owner’s insurance carrier’s right to subrogate is totally barred. In addition to the loss for damage to the Work, the owner’s carrier must also bear the loss for damage to other areas which, under the contrary construction urged by plaintiff, would ultimately have been borne by the liability insurer of the contractor.
Our analysis of the contract supports plaintiff’s construction. The waiver clause (art 17.6) bars the claim of the owner’s subrogee to the extent that the damages sought are covered either by: (1) "insurance obtained pursuant to [art 17]” or (2) "any other property insurance applicable to the Work” (emphasis added). The first alternative (insurance obtained pursuant to art 17) refers to insurance which the owner has procured under article 17.3 in which it is obligated to provide insurance "upon the entire Work at the site” (emphasis added) and to include therein the interests of the contractor and subcontractors "in the Work” (emphasis added). The second speaks for itself. It refers only to other insurance "applicable to the Work” (emphasis added). It makes no difference whether the policy under which subrogation is sought is one which the owner purchased specifically to insure the Work pursuant to article 17.3 or some other policy covering the owner’s property in which the owner has also provided coverage for the Work. In either event, the waiver clause, if given its plain meaning, bars subrogation only for those damages *234 covered by insurance which the owner has provided to meet the requirement of protecting the contractor’s limited interest in the building — i.e., damages to the Work itself. On the other hand, no wording in article 17 supports the view urged by defendants,[1] that the waiver in article 17.6 includes not only damage to the Work itself but encompasses all damages flowing from the Work.
Plaintiff owner’s construction of article 17.6, unlike that of defendants, gives full effect to the bargain concerning the parties’ respective insurance responsibilities set forth in article 17. Under article 17.1, the contractor is required to obtain liability insurance protecting it from "claims for damages * * * to property * * * other than to the Work itself’. Under plaintiff’s construction, in the event of a claim for non-Work property damage, the insurer under the contractor’s liability policy would be responsible. Under the construction of article 17.6 urged by defendants, however, this would not be so. The contractor’s liability insurer is relieved of responsibility for any damage caused by the contractor to parts of the building outside the Work. Any responsibility for such a loss which the contractor’s insurer might otherwise bear is transferred to the owner’s insurer which in effect, is transformed into the liability carrier for the contractor. This result is not consistent with either the natural and obvious meaning of article 17.6 or with what seems to be the over-all sense of the arrangement in article 17 — that the contractor is to be responsible for negligently caused damage outside the Work and must carry a policy insuring its liability therefor (see, art 10.7 in which the contractor assumes responsibility to the owner for acts and omissions of its employees and its subcontractors).
Moreover, plaintiff’s interpretation of the subrogation waiver clause as being limited in scope to damage to the Work is consistent with the difference which our case law recognizes in the respective interests of the owner and contractor under an owner’s property insurance policy during the course of construction. Under Tishman Co. v Carney & Del Guidice (34 NY2d 941, 942-943, affg 36 AD2d 273), the contractor’s insurable interest in the irlsured building extends only to the tools, labor and materials which it has furnished and the owner’s insured’s right of subrogation is barred only to the extent of that insurable interest. The rationale of Tishman is simply *235 that the contractor is a constructive insured under the owner’s property insurance policy only to the extent of its insurable interest in the building; it follows, therefore — under the settled rule that the insurer has no right of subrogation against its own insured (see, Pennsylvania Gen. Ins. Co. v Austin Powder Co., 68 NY2d 465, 471; cf., New York Bd. of Fire Underwriters v Trans Urban Constr. Co., 60 NY2d 912)— that the owner’s insurer is barred from subrogation only to the extent of property in which the contractor has an insurable interest: i.e., its tools and the labor and materials which it has furnished (see, arts 1, 17.4).
Defendant’s broad construction of article 17.6 — embracing all claims for damages to the building covered by the owner’s property insurance, not only property in which the contractor has an insurable interest — is patently inconsistent with Tishman and imposes a restriction on the carrier’s subrogation rights beyond that imposed by the law or by what seems to be the commonsense reading of article 17. We are, thus, not persuaded by the reasoning in Haemonetic Corp. v Brophy & Phillips Co. (23 Mass App 254, 501 NE2d 524 [1986]), relied on by defendants, that merely because "the owner chose to provide [broader insurance than necessary] to comply” with the requirement in the insurance clause, the owner’s insurer’s subrogation rights should be barred for all damage to the building irrespective of the contractor’s insurable interest (id., at 526).
We agree with the analysis of the court in Public Employees Mut. Ins. Co. v Sellen Constr. Co. (48 Wash App 792, 740 P2d 913 [1987]), a case similar to the one at bar involving identical contractual provisions, in which the court reached a result consistent with Tishman. There, in interpreting the waiver clause as not barring the carrier’s subrogation claim for non-Work damage, the court concluded that the parties intended that the contractor be required to maintain liability insurance "covering any damage to non-Work property caused by its construction activities. Likewise, the parties must have intended that [the contractor] not be included as a co-insure[d] on [the owner’s] insurance with respect to any loss that occurred to such non-Work property. [The owner], on the other hand, was to have purchased insurance to cover the Work, and [the contractor] was constructively co-insured [as to this]” (id., at 796, at 915 [emphasis added]).
Defendants contend, and the dissenters agree, that this *236 court’s decision in Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp. (106 AD2d 242, affd 66 NY2d 779, supra) supports their construction of the contract and is controlling here. We disagree. As the Appellate Division held, Trump-Equitable is distinguishable. Under the contract at issue in Trump-Equitable, the work to be performed involved the construction of the entire building; the owner was required to procure property insurance for the entire building; therefore,. the owner’s waiver under the subrogation waiver clause extended to damage to the entire building. The contract at issue here, by contrast, is a "limited scope” construction contract; the Work includes only the exterior walls and the floor of the parking garage; the owner’s responsibility to procure insurance and the corresponding waiver of subrogation rights extend only to those specific areas.[2] For the same reason, other cases relied on by defendants and cited by the dissent, involving contracts for the construction of entire buildings, are also inapposite (see, e.g., Tokio Mar. & Fire Ins. Co. v Employers Ins., 786 F2d 101 [2d Cir 1986] [citing Trump-Equitable]; South Tippecanoe School Bldg. Corp. v Shambaugh & Son, 182 Ind App 350, 395 NE2d 320; Morsches Lbr. v Probst, 180 Ind App 202, 388 NE2d 284 [3d Dist 1979]).[3] As the Washington court in Public Employees Mut. Ins. Co. v Sellen Constr. Co. (48 Wash App, at 796, 740 P2d, at 915, supra) observed, "The court cannot ignore the language agreed upon by the parties, or revise or rewrite the contract”.
*237 As plaintiff now concedes, the lower courts properly dismissed its claim to the extent it sought recovery for damages to the Work itself. To the extent plaintiffs insurer, the real party in interest, seeks recovery for damages to property other than the Work, this claim is not barred by plaintiffs waiver in article 17.6.
Accordingly, the order of the Appellate Division should be affirmed and the certified question answered in the affirmative.
Alexander, J.
(dissenting). The majority holds today that the subrogation waiver clause in this standard American Institute of Architects (ALA) form contract does not bar the owner’s insurer from seeking recovery from the contractor for property damage to the owner’s building so long as the damage is not to the actual work to be performed under the contract. This limited construction of the subrogation waiver clause is flatly contrary to our construction of an identical clause in Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp. (106 AD2d 242, affd for reasons stated below 66 NY2d 779) and undermines the very purpose of the clause. Rather than promoting certainty as to the liability of the parties to these standard contracts, the majority’s construction of this standard waiver clause invites litigation as to whether the damages in any particular case fall within the scope of the work to be performed under the contract. In my view, a construction of the clause to bar the owner from seeking all damages as to which it has obtained insurance under the contract, thereby barring any subrogation action by the owner’s insurer, best effectuates the intent of the parties to the contract. Accordingly, I respectfully dissent.
The contract allocates the risks of the construction by requiring that the contractor obtain third-party liability insurance and the owner obtain first-party coverage for property damage to "the entire Work at the site to the full insurable value thereof’ and further providing that the parties waive all rights against each other for damages covered by such insurance. The relevant provisions of article 17, which relates to insurance, are as follows.
"17.1 Contractor’s liability insurance shall be purchased and maintained by the Contractor to protect him from claims under the worker’s or workmen’s compensation acts and other employee benefit acts, claims for damages because of bodily injury, including death, and from claims for damages, other *238 than to the Work itself, to property which may arise out of or result from the Contractor’s operations under this Contract * * *
"17.3 Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of fire and extended coverage and shall include 1all-risk’ insurance for physical loss or damage including, without duplication of coverage, theft, vandalism, and malicious mischief. * * *
"17.6 The Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Article or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by the Owner as trustee.” (Emphasis added.)
The owner’s property insurance must provide "all-risk” coverage and "includes”, but is not limited to, the respective parties’ interests in the "Work”.
In Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp. (106 AD2d 242, affd for reasons stated below 66 NY2d 779, supra), the Appellate Division concluded that this subrogation waiver clause bars any action by an owner (or an owner’s subrogee) against a contractor for property damage to the subject building falling within the owner’s first-party coverage. Reasoning that a contract provision requiring the contractor to indemnify the owner related only to liability to third parties and thus did not come within the owner’s first-party coverage, the court held that the indemnity and waiver provisions were not in conflict (id., at 244-245; see also, Federal Ins. Co. v Zwicker Elec. Co., 144 AD2d 632; Tokio Mar. & Fire Ins. Co. v Employers Ins., 786 F2d 101 [2d Cir 1986]). Our affirmance of this reasoning was in no way dependent upon the fact, seized upon by the majority (majority opn, at 236), that the contract in Trump-Equitable related to the construction of an entire building rather than, as in this case, construction work performed on an existing building.
Nor would such a distinction be meaningful in light of the fact that these subrogation waiver clauses are intended to avoid litigation over claims for damages while also protecting the parties by "in effect simply requiring] one of the parties *239 to the contract to provide insurance for all of the parties” (Board of Educ. v Valden Assocs., 46 NY2d 653, 657; Tokio Mar. & Fire Ins. Co. v Employers Ins., 786 F2d, at 104, supra; Haemonetics Corp. v Brophy & Phillips Co., 23 Mass App 254, 501 NE2d 524, 526). Here, it is the owner who was required to insure against damage to the building and to waive all claims against the contractor for losses covered by that insurance. I agree with those courts holding that in these circumstances the parties have agreed that the owner’s recovery for these losses is limited to its insurance proceeds and neither the owner, nor its insurer (as subrogee) has any cause of action against the contractor[1] (see, Village of Rosemont v Lentin Lbr. Co., 144 111 App 3d 651, 494 NE2d 592; E. C. Long, Inc. v Brennan’s of Atlanta, 148 Ga App 796, 252 SE2d 642; Housing Inv. Corp. v Carris, 389 So 2d 689 [Fla App 1980]; see also, Insurance Co. v Wells, 35 Ohio App 2d 173, 300 NE2d 460; Morsches Lbr. v Probst, 180 Ind App 202, 388 NE2d 284 [1979]; South Tippecanoe School Bldg. Corp. v Shambaugh & Son, 182 Ind App 350, 395 NE2d 320 [1979]).[2] As stated in Housing Inv. Corp. v Carris (389 So 2d, at 690, supra): "The owner had, as all owners always have, the right to insure his own property for his own exclusive benefit without the consent or agree *240 ment of the contractor or anyone else. Therefore, the only reasonably conceivable purpose of a construction contract provision placing an obligation on the owner to carry insurance is to benefit the contractor by providing him protection and exculpation from risk of liability for the insured loss. Although the contractor was not named as an insured, nor does the contract require this to be done, the contract insurance provision is valuable to the contractor for the very purpose this case exemplifies and serves to limit the owner to insurance proceeds even though the loss was caused by the negligence of the contractor.” Given this allocation of risk agreed upon by the parties, the fact that that insurance coverage is not limited to the actual work performed under the contract is irrelevant (Haemonetics Corp. v Brophy & Phillips Co., supra).
In this case, the "Work” to be performed is described in the contract, in part, as "Corrective Work to the Masonry and Concrete Portions of Exterior Walls” and included renovation of brick panels, masonry walls and windows on each of the building’s 38 floors. The limited construction of the subrogation waiver clause adopted by the majority today requires further litigation, and perhaps a trial, to determine the extent to which the damages suffered by plaintiff was related to that Work. In my view, this construction leaves the contractor’s liability uncertain in every case and thus completely undermines the purpose of the subrogation waiver clause. Accordingly, I vote to reverse the order of the Appellate Division and reinstate the judgment of Supreme Court granting summary judgment.
Judges Simons, Kaye and Titone concur with Judge Hancock, Jr.; Judge Alexander dissents and votes to reverse in a separate opinion in which Judge Bellacosa concurs; Chief Judge Wachtler taking no part.
Order affirmed, with costs, and certified question answered in the affirmative.

. For simplicity, where appropriate, defendant and third-party defendant will be referred to collectively as "defendants”.

. Contrary to the contention of the dissent, the reasoning underlying the holding in Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp. (106 AD2d 242, affd 66 NY2d 779) is not that "a contract provision requiring the contractor to indemnify the owner related only to liability to third parties and thus did not come within the owner’s first-party coverage” (see, dissenting opn, at 238). The court simply construed the contract, which was for the construction of an entire building, as obligating the owner to purchase "property insurance for damages to the construction project to its full insurable value” (106 AD2d, at 243, supra) and "to obtain first-party coverage for property loss in the event of damage to the building during [its] construction” (id., at 244-245). Nothing in Trump-Equitable supports the conclusion urged by the dissent that, under the general AIA conditions at issue, the contractor is only responsible for third-party claims. Indeed, such a conclusion is contrary to defendant’s general responsibility to plaintiff for the acts and omissions of its employees under article 10.7 and its specific responsibility under article 17.1 to procure liability insurance for claims for property damage, other than to the Work itself.

. Still other cases cited are inapposite because the contract clauses requiring the owner to procure insurance were broader than the clause here (see, Housing Inv. Corp. v Carris, 389 So 2d 689 [Fla App 1980]; Insurance Co. v Wells, 35 Ohio App 2d 173, 300 NE2d 460 [1973]).

. The majority’s reliance upon Tishman Co. v Carney & Del Guidiee (34 NY2d 941, affg 36 AD2d 273) in support of its contrary construction of the subrogation waiver provision is misplaced (majority opn, at 234-235). Tishman involved whether, absent an insurable interest in the damaged property, a contractor was a coinsured under the owner’s insurance policy so as to bar, by operation of law, a subrogation action against the contractor. In this case, by contrast, plaintiff has agreed, as it was free to do, to limit its recovery to its insurance proceeds and thereby preclude an action by its subrogee. It is of no consequence, therefore, that absent such an agreement, plaintiff’s subrogee would be limited to an action against defendant for damage to property other than the Work (Tishman Co. v Carney & Del Guidice, supra).

. Public Employees Mut. Ins. Co. v Sellen Constr. Co. (48 Wash App 792, 740 P2d 913 [1987]), cited as contrary authority by the majority (majority opn, at 235), is not persuasive. That case involved damage to microfiche records which were not located at the construction site. While the court concluded that a subrogation action against the contractor was not barred by the subrogation waiver clause because these records did not constitute the "Work” for which the owner was required to obtain insurance, the decision turned upon the fact that the records were not located at the construction site (id., at 914-915). In fact, the court expressly distinguished Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp. (106 AD2d 242, affd 66 NY2d 779) and Village of Rosemont v Lentin Lbr. Co. (144 111 App 3d 651, 494 NE2d 592) by explaining that in those cases "there was sufficient evidence * * * that the damage was to the Work, i.e., property under construction or property unambiguously located at the construction site” (id.).