**FIDELITY AND GUARANTY INSURANCE COMPANY, Plaintiff,**

v.

**CRAIG–WILKINSON, INC., Defendant.**

Civil Action No. 3:93–CV–694WS.

United States District Court, S.D. Mississippi.

March 31, 1996.

John D. Price, Joanne S. Samson, Wise, Carter, Child & Caraway, Jackson, MS, for plaintiff.

Douglas R. Duke, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court are the motion for partial summary judgment submitted by the plaintiff, Fidelity and Guaranty Insurance Company, and the cross-motion for partial summary judgment submitted by the defendant, Craig–Wilkinson, Inc. Jurisdiction of this matter is predicated upon Title 28 U.S.C. § 1332[1] (diversity of citizenship).

## FINDINGS OF FACT

1. On May 6, 1993 Craig–Wilkinson, Inc. entered into a written contract with Frank W. Trapp and his wife, Belmont Trapp, whereby Craig–Wilkinson, Inc. agreed to build an addition to the residence of Mr. and Mrs. Frank W. Trapp.

2. The Work Craig–Wilkinson, Inc. agreed to perform pursuant to the Contract dated May 6, 1993 with Mr. and Mrs. Frank Trapp was the construction of an 800 square foot addition to the residence of the Trapps. The project was identified by Craig–Wilkinson, Inc. as: "An addition to the residence of Mr. and Mrs. Frank W. Trapp." Page 1 of Contract.

3. On June 15, 1993, a fire occurred which consumed both the addition which was under construction as well as the existing Trapp residence. Fidelity & Guaranty contends the fire was caused by the negligence of an employee of Craig–Wilkinson's subcontractor.

4. The contract provides in part that "the Contractor shall be responsible to the Owner for the acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons performing portions of the Work under a contract

with the Contractor." Article 9.7 of the Contract.

5. Article 9.12 of the contract provides:

To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner … and agents and employees of any of them from and against claims, damages, losses and expenses, including but limited to, attorney's fees arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

6. The Contract placed certain duties on Craig–Wilkinson, Inc. to obtain insurance. Article 17.1 provides:

The Contractor shall purchase … insurance … from claims for damages, other than to the Work itself, to property which may arise out of or result from Contractor's operations under the Contract....

7. Craig–Wilkinson, Inc. complied with the requirements of Article 17.1 and had in place at the time of the loss a commercial general liability policy issued by Amerisure Insurance Company being policy number CPP–0412357–0093.

8. The construction contract dated May 6, 1993 placed certain duties on the Owner to purchase insurance. Paragraph 17.3 states:

Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance upon

---

1. Title 28 U.S.C. § 1332 provides in pertinent part:
    (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000 exclusive of interest and costs, and is between—
    (1) citizens of different States; …

the entire Work at the site to the full insurable value thereof. This insurance shall be on an all risk policy form and shall include interests of the Owner, the Contractor, the Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of fire. . . .

9. The Trapps and Craig–Wilkinson, Inc. agreed, however, the Contractor would provide the property (builder's risk) insurance on the Work. The Trapps declined to have Craig–Wilkinson added as a loss payee on the Trapps' homeowner's policy on the existing residence. Deposition of Frank W. Trapp pp. 9, 10, 16–18.

10. By letter dated May 19, 1993, executed 13 days after the construction contract quoted above, Lewis S. Wilkinson, Jr., Vice President of Craig–Wilkinson, Inc., wrote to Mr. Frank Trapp the following:

> I have spoken with my insurance representative, Mr. Jud Allred, regarding the builder's risk insurance on the new addition for your residence after he had spoken with Mr. Drew Sampson of Sampson, Howard & Ashcraft. It appears that the best solution for the most coverage at the best price would be for me to file for the builder's risk insurance and name you as an additional insured and for you to leave your insurance as is until such time that the addition is complete. At that time, you would certainly want to increase your coverage.

11. In accordance with their agreement as noted in Craig–Wilkinson, Inc.'s May 19, 1993 letter and in reliance on the same, Frank Trapp did not purchase an all risk policy upon the entire Work. Deposition of Frank W. Trapp, pp. 16–17.

12. Craig–Wilkinson, Inc. purchased the all risk property (builder's risk) insurance on the "Work" as contemplated by Article 17.3 and 17.6 of the Contract and paid premiums for such insurance based upon a cost of Work of $90,754.00. Deposition testimony of Louis Wilkinson p. 9.

13. The $90,754.00 was the Contract price for which Craig–Wilkinson, Inc. agreed to construct the 800 square foot addition as reflected on sheets 1 and 2 entitled "Alterna-

tion/Addition for Mr. and Mrs. Frank Trapp, 4134 Oakridge, Jackson, MS" prepared by Craig–Wilkinson. Deposition testimony of Louis Wilkinson p. 9.

14. The builder's risk policy was issued by Maryland Casualty and was policy number EC88516885.

15. Craig–Wilkinson, Inc. prepared and submitted a claim to Maryland Casualty for fire damage to the "Work."

16. Pursuant to the builder's risk insurance policy, Maryland Casualty paid $19,479.41 to Craig–Wilkinson for fire damage to the "Work."

17. Craig–Wilkinson, Inc., then, paid a part of those insurance proceeds to the Trapps as a partial reimbursement of a progress payment for construction of the residence. The Maryland Casualty builder's risk insurance policy did not cover and did not pay for the damage to the existing residence of Frank and Belmont Trapp, the contents of their residence or landscape damages.

18. At the time of the fire Frank and Belmont Trapp had in place a policy of insurance with Fidelity and Guaranty Insurance Company which insured the residence of the Trapps. Pursuant to the policy, Fidelity and Guaranty Insurance Company paid the following damages to the Trapps:

| | |
|---|---|
| Existing dwelling | $218,619.00 |
| Landscaping | 10,410.00 |
| Contents of existing dwelling | 145,746.00 |
| Additional living expenses | 22,500.00 |
| Fur coat | 5,850.00 |
| TOTAL | $403,125.00 |

19. The builder's risk insurance policy written by Maryland Casualty which provided compensation for damage to the Work did not contribute to or pay any damages resulting from the above described losses.

20. The Maryland Casualty builder's risk policy excluded from its coverage the existing residence of the Trapps, and, accordingly, their personal property.

21. The contract defines the term "work" as follows:

> The term 'Work' means the construction and services required by the Contract Documents, whether completed or partially

completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

Article 7.4 of Contract.

22. Article 17.6 of the contract provides in part as follows:

The Owner and Contractor waive all rights against each other and the Architect, Architect's consultants, separate contractors described in Article 12, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Article 17 or any other property insurance applicable to the Work. . . .

23. The contents of the Trapp residence destroyed in the fire were not a part of the construction Craig–Wilkinson, Inc. was performing.

## CONCLUSIONS OF LAW

In this diversity action, Mississippi law governs the construction of the contract in issue. Under Mississippi law, contracts must be construed as a whole and all provisions must be given effect. *McCain v. Cox*, 531 F.Supp. 771 (N.D.Miss.), *affirmed*, 692 F.2d 755 (5th Cir.1982).

■ Craig–Wilkinson, Inc. asserts that the Article 17.6 waiver provision bars this suit. However, Article 17.6 does not bar Plaintiff's claim for damage to non-Work property. The contractual waiver provides solely for waiver of claims for damage to the "Work." The existing residence and its contents, and the adjacent landscaping were not a part of the "Work." Therefore, Fidelity & Guaranty is not precluded by the waiver clause from seeking recovery of damages from Craig–Wilkinson, Inc. If the parties had intended that the Contract should waive all claims against each other, they would have so provided. Instead, the waiver clause applies only "to the extent covered by property insurance obtained pursuant to this Article 17 or any other property insurance applicable to the Work." *Contract, Article 17.*

The phrase "applicable to the Work" is unambiguous and does not require one to resort to redefining its terms as done by Craig–Wilkinson. Craig–Wilkinson argues that "insurance applicable to the Work" should mean " 'causally connected' to the Work" or "insurance coverage which would apply to any damages caused by 'the Work'." In so doing, Craig–Wilkinson rephrases the contract to serve its own purposes.

"Applicable to the Work" unambiguously means capable of being applied to the Work.

Pursuant to its agreement, Craig–Wilkinson, Inc. did have in place at the time of the fire a builder's risk policy. This was the Maryland Casualty "all risk" property insurance obtained pursuant to Article 17. It was the only property insurance applicable to the Work. It was this Maryland Casualty builder's risk policy that paid for the fire damage to the Work.

In contrast, Maryland Casualty builder's risk policy did not cover damage to the existing residence of Frank and Belmont Trapp, the contents of their residence, adjacent landscaping and other non-Work damages. Fidelity & Guaranty's claim is for those damages. Accordingly, Fidelity & Guaranty has filed a cross-motion for partial summary judgment seeking an adjudication that the contractual waiver clause relied upon by Craig–Wilkinson in its Motion for Summary Judgment does not bar this claim for damage to non-Work property.

More specifically, Article 17.6 of the Contract between the Trapps and Craig–Wilkinson does not constitute a waiver of Fidelity & Guaranty's subrogation claim for fire damages caused by Craig–Wilkinson's alleged negligence because:

a. The contractual waiver in Article 17.6 relates solely to damages to the "Work" and the damages claimed in this case do not relate to the "Work" but instead to other property owned by the Trapps which was also damaged by the fire. The Contract provides:

(1) *Article 6.* "Enumeration of Contract Documents," further defines what comprises the "Work" by subparagraph 6.1.4 which refers to the Work

as that set forth in "Sheets 1 and 2 titled 'Alteration/Addition for Mr. & Mrs. Frank Trapp, 4134 Oakridge, Jackson, MS' prepared by the contractor." These sheets depict construction of an 800 square foot addition to the Trapps existing residence. Thus by the Contract's plain language, the "Work" defined in the Contract pertains only to the 800 s.f. addition the contractor agreed to build, not to the existing residence, its contents, or any surrounding landscaping.

(2) *Article 7.4.* "The term 'Work' means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project." "This definition indicates that 'Work' only refers to the contractor's labor, materials, etc. which are needed to fulfill its contractual obligation." *Butler v. Mitchell Huqeback, Inc.,* 1994 W.L. 424648 (Mo.App.E.D. Aug. 16, 1994) (slip opinion) (Court's interpretation of identical language to provision here).

The several policies of insurance which responded to the claims arising from the fire confirm that the "Work" consisted solely of the addition construction.

Both the Trapps and Craig–Wilkinson, Inc. had an insurable interest in the Work. The Trapps and Craig–Wilkinson made provision for Craig–Wilkinson to obtain all-risk property insurance to protect their respective interest in the Work. When Maryland Casualty paid for the loss of the Work, *i.e.* the new construction only, the proceeds were sent to Craig–Wilkinson, Inc., which then paid a portion to the Trapps based upon their different insurable interests, i.e., the initial progress payment for the construction of the addition.

On the other hand, the Trapps' homeowner's policy paid only the Trapps and then only for damage to the existing residence and its contents. Craig–Wilkinson, Inc. was not an additional named insured in the homeowner's policy issued by Fidelity and Guaranty. Indeed, the Trapps refused to add Craig–Wilkinson as a loss payee. Frank W. Trapp's deposition at pages 9, 10. Under no reasonable argument can Craig–Wilkinson, Inc. be found to have had an insurable interest in the contents of the Trapps' residence or the existing residence.

Again, the Contract defines the term "Work" as "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations." The household furnishings of the Trapp residence were not "materials" or "equipment" provided by the Contractor. The existing residence of the Trapp family was not "materials" or "equipment" provided by the Contractor. Moreover, they were not the "construction and services required by the Contract."

Craig–Wilkinson's references to other contract clauses, specifically its Article 9.9 duty to keep "the premises and surrounding area" clean and Article 21.2 requirement to provide final grading "around house" does not make the existing residence a part of the "Work" as defined by the Contract. Fidelity & Guaranty makes no claim for failure to keep the premises and surrounding area clean or for failure to grade "around house." Additionally, Article 21.2 specifically excludes "landscaping materials" which exclusion would apply to the landscaping part of the damage claimed by Fidelity & Guaranty.

Craig–Wilkinson fails to explain how its duty to clean up the yard, "around the house" or remove its equipment upon completion of the Work transforms the contents of the Trapps' home and the existing residence into the Contrac-

tor's Work. Craig–Wilkinson's tenuous argument merely reinforces the fact that on the Trapps' lot there was contractor's Work as defined in the Contract and there was property which was not within the contractual definition of Work. Fidelity & Guaranty makes no claim for fire damage to the Work but only seek damages to non-Work property.

The defendant has submitted affidavits from electrical and plumbing workmen attesting that the electrical wiring and plumbing in the addition had to be tied into the existing wiring and plumbing in the existing residence. The fact that the new construction was connected to the existing non "Work" property does not transform the entire existing Trapp residence and all of its contents into "Work" as defined in the Contract.

Craig–Wilkinson's expansive definition of the term "Work" is also contradicted by its builder's risk policy that, by its terms, excludes damage to the existing building. That is, Craig–Wilkinson's builder's risk policy specifically excluded damage to "an existing building or structure to which an addition, alteration, improvement or repair is being made." Home Builder's Risk Coverage Form, Page 1.

■ On the other hand, Craig–Wilkinson's general liability policy issued by Amerisure covered damage to non-Work property but excludes "Property damage to 'your Work' arising out of it or any part of it ..." Amerisure, Commercial General Liability Coverage Form.

(3) *Article 17.1.* Under subparagraph 17.1 Craig–Wilkinson was required to provide insurance protection covering whatever damage the Contractor may cause other than to the Work itself. Consequently, Craig–Wilkinson or its insurer is liable for a claim for non-Work property damage. *See Butler v. Mitchell–Huqeback [Hugeback], Inc., supra.* (Butler claims the waiver [of subrogation] should not apply to non-Work property)

(4) *Article 17.3* provides: "Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall be on an all-risk policy form and shall include interests of the Owner, the Contractor, Subcontractors and the Sub-subcontractors in the Work and shall insure against the perils of fire and extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief." It is undisputed the Trapps and Craig–Wilkinson "otherwise provided" ... for the property insurance on the Work. Pursuant to this agreement, Craig–Wilkinson obtained the builder's risk (all risk) property insurance from Maryland Casualty.

Louis Wilkinson, Vice President of Craig–Wilkinson, admitted in his deposition that Craig–Wilkinson purchased property insurance on the "Work" as determined by the value of the addition only, excluding the value of the existing residence and its contents. Louis Wilkinson Deposition, p. 9.

(5) *Article 17.6.* The interpretation of Article 17.6 suggested by Craig–Wilkinson would not give effect to the agreement of the parties concerning their respective insurance responsibilities set forth in Article 17. Under Craig–Wilkinson's interpretation, Craig–Wilkinson's liability insurer is relieved of responsibility for any damage caused by Craig–Wilkinson to the existing residence all of which was outside the Work. Under this interpretation, the responsibility for the loss that Craig–Wilkinson's insurer should otherwise bear is transferred to the Trapps' insurer. That, in effect, turned the Trapps' insurer, Fidelity & Guaranty, into the liability carrier for the Contractor. This result is inconsistent with the obvious intent and harmony of the Contract when read in its entirety.

■ To relieve Craig–Wilkinson of liability coverage for the negligence of the contractor is not supported by a complete reading of the Contract. If the Contractor was to be relieved of liability for the negligence of the Contractor's employees, there would be no reason for requiring the Contractor to acquire liability coverage in the first place. (Article 17.1). If the Contractor is going to be relieved of liability for the negligence of the Contractor's employees, there would be no reason for Sections 9.12 and 9.7 which impose liability on the Contractor for negligent damage to non-Work property. Reading Articles 9 and 17.1 together the inevitable conclusion is that the Contractor is to be responsible for negligently caused damage outside the Work and must carry a policy insuring its liability.

The over-all sense of the arrangement in Article 17 is that the contractor is to be responsible for negligently caused damage outside the Work and must therefore carry a policy insuring its liability. It is thus clear that the waiver of damage to the "Work" does not include damages to the existing structure and its contents and the surrounding landscape and to persons which are not a part of the "Work" as defined in the contract.

b. The contractual waiver in Article 17.6 does not waive claims for damage to non-Work property.

■ The waiver of subrogation clause is not unrestricted as is asserted by Craig–Wilkinson. The actual wording of the clause is as follows:

The Owner and Contractor waive all rights against each other ... for damage caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Article 17 or any other property insurance applicable to the Work.

Craig–Wilkinson reads the clause as follows:

The Owner and Contractor waive all rights against each other ... for damage caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Article 17 or any other property insurance applicable to the Work. ...

Craig–Wilkinson's interpretation strikes the qualifying clause which limits its scope. The qualifying clause limits its application to "property insurance obtained pursuant to this Article 17 or any other insurance applicable to the Work." The claim of Fidelity & Guaranty is not subject to this waiver because neither aspect of the qualifying phase is applicable.

First, the damages reimbursed by the builder's risk insurance procured by Craig–Wilkinson are not a part of this suit. (Pursuant to their agreement, Craig–Wilkinson agreed to obtain the all risk property insurance discussed in Article 17.3.)

Second, Fidelity & Guaranty asserts no claim for fire damage to the Work. By its terms, the waiver clause does not apply to the claim arising from damage to non-Work property.

Third, nothing in Article 17 required the Owner to obtain property insurance for non-Work property.

The Trapps and Craig–Wilkinson, through the AIA Document A1071987 "Limited Scope" Contract, have agreed upon an allocation of their respective responsibilities, risks and insurance obligations pertaining to the possibility of property damage occurring during the contract and to the contractor's potential liability stemming from its operation. Therefore, the Trapps have waived only those rights as against Craig–Wilkinson for damages occurring to the Work under contract, not to any other damages extending beyond the limits of the contracted Work. That waiver only extends to the amount paid by Craig–Wilkinson's builder's risk carrier. *S.S.D.W. Co. v. Brisk Waterproofing Company, Inc.,* 76 N.Y.2d 228, 557 N.Y.S.2d 290, 556 N.E.2d 1097 (1990); *Travelers Insurance Companies v. Dickey,* 799 P.2d 625 (Sup.Ct.OK.1990); *Public Employees Mut. Ins. Co. v. Sellen Const. Co.,* 48 Wash.App. 792, 740 P.2d 913 (1987).

Accordingly Fidelity and Guaranty's Motion for Partial Summary Judgment is grant-

ed and Craig–Wilkinson's Cross–Motion for Partial Summary Judgment is denied.

**SO ORDERED AND ADJUDGED.**