**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 95-60805

FIDELITY & GUARANTY INSURANCE CO.,

                                        Plaintiff-Appellee,

versus

CRAIG-WILKINSON, INC.,

                                        Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi
(3:93-CV-694)

October 23, 1996

Before JONES and WIENER, Circuit Judges, and FURGESON,[*] District Judge.

PER CURIAM[**]:

This is an appeal from an adverse judgment of the district court following a bench trial in a diversity case that essentially

---

[*]  District Judge for the Western District of Texas, sitting by designation.

[**]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

pitted one insurance company against another. The litigation was a result of claims produced when fire destroyed a single-family residence during the course of construction of an addition to it. Concluding that the district court correctly ruled that mutual waivers of subrogation by the homeowners and the general contractor did not affect the policy of homeowner's insurance covering the principal residence, to which the contractor was building the addition, we affirm.

I

Defendant-Appellant Craig-Wilkinson, Inc. (Contractor) insists that the district court erred in holding that mutual waivers of subrogation by the Contractor and the homeowners (the persons insured by Plaintiff-Appellee Fidelity & Guaranty Insurance Company (F&G) under a homeowner's policy) were ineffective against F&G. This ruling allowed F&G to sue the Contractor in subrogation to recover amounts paid by F&G to its insureds under the homeowner's policy for fire damage to their principal residence and its contents. The thrust of Contractor's argument is that (1) under article 17.6 of the construction agreement, F&G's homeowner's policy constitutes "other property insurance applicable to the Work," and (2) despite the construction contract's definition of the "Project" as "[t]he addition to the residence," and despite the statement in that contract that the "Work might constitute the whole or a part of the Project," the principal residence does fall within the contract's definition of the "Work" as

2

the construction and services required by the contract documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfil the Contractor's obligations.

Thus, insists the Contractor, inasmuch as its services in constructing the addition necessarily included work on the existing residence (such as connecting the addition to the residence, including plumbing, electrical, and physical portions of the existing dwelling), the term "Work" had to comprise the existing house as well as the addition. Indeed, notes the Contractor, the very electrical fixture that caused the fire was one that the Contractor had moved from its existing location on the original residence and placed in another part of that structure in conjunction with constructing the addition and connecting it to the house so as to make the addition an integral part of it.

The Contractor also perceives support in its letter of May 19, 1993, addressed to the homeowners, which varied the insurance responsibilities of the parties from those specified in the contract documents. In an effort to obtain the "most coverage at the best price" during the period of construction, the homeowners and the Contractor agreed that (1) the Contractor would obtain a policy of Builders Risks insurance on the new addition only and would name the homeowners as additional insureds; (2) the homeowners would leave the F&G homeowner's policy "as is" (covering only the existing residence at its current, pre-addition value, without naming the Contractor as an additional insured, and without

3

increasing either the value of the insured property or the premiums) until completion of the addition; and, (3) the Contractor would send the owner a copy of the Builders Risks Certificate "as well as a Certificate on our personal [general liability] coverage," indicating that the Contractor would continue to maintain its comprehensive general liability insurance in effect to cover the Contractor's responsibility for any and all damages arising from its negligence.

## II

We have now carefully considered the essentially undisputed facts revealed by the record, as found by the district court and as addressed by able counsel in their respective briefs and oral arguments to this court. With equal care we have considered the applicable law, as explained by counsel both orally and in briefs, as applied by the district court in reaching its decision, and as independently researched and analyzed on our own. In the end, we are convinced that the district court committed no reversible error in holding that the homeowner's insurance policy issued by F&G was neither obtained pursuant to article 17 of the construction contract (it clearly had been obtained by the homeowner well in advance of the construction contract) nor "other property insurance applicable to the Work" (the F&G policy was applicable to the existing residence only and the contract's definition of the Work is not broad enough to include that residence).

Regardless of the incidental involvement of the Contractor and

4

its subcontractors with the existing residence (such as sending the plumber under the house to check on plumbing connections, removing and relocating the fateful flood light, and the like), the concept of the "Work" is not mystically expanded to include the entire existing residence. This is particularly so when as here the concept of the "Project," which the construction agreement defines as "an addition to the residence," can never be less than the Work: The Work is defined as constituting "the whole or a part of [and thus can never be more than] the Project." As noted, the Contractor's letter of May 19, 1993, advocated retaining the existing F&G policy "as is," i.e., applicable only to the existing residence, throughout the entire construction period of the addition.

Simply put, as the existing residence cannot be deemed to be a component part of the Work, it follows that F&G's homeowner's policy —— insuring as it did only the existing residence —— provided no coverage of the Work, i.e., the new addition. That in turn precludes the homeowners' and the Contractor's reciprocal waivers of subrogation from affecting F&G's homeowner's policy; by definition, the waivers applied only to policies (1) obtained pursuant to article 17 of the contract or (2) applicable to the Work. F&G's homeowner's policy was neither, so it was not affected by the waivers.

This hiatus in the effect of the waivers of subrogation frees F&G to pursue subrogation against the Contractor (in reality,

5

against the issuer of the Contractor's comprehensive general liability policy) for the costs and expenses incurred by F&G under the homeowner's policy as a result of the fire attributable to Contractor's negligence.  When the homeowners and the Contractor elected to maintain and provide insurance in the manner proposed by Contractor in the letter of May 19, 1993, the seeds were sewn for the creation of that hiatus in the effectiveness of the waiver of subrogation.  The facts considered by New York's Court of Appeals in <u>S.S.D.W. Co. v. Brisk Waterproofing Co., Inc.</u>[3] are essentially indistinguishable from those presented by the instant case; at best, any distinctions are without a difference.  And, like the district court before us, we agree with the analysis of the majority opinion in <u>Brisk</u> and its applicability to the instant facts and circumstances.

### III

Finding no reversible error in the district court's conduct of the bench trial in this case or in that court's findings, reasoning, and ultimate holding, we affirm the judgment of the district court in all respects.

AFFIRMED.

---

[3]   556 N.E.2d 1097 (N.Y. 1990).