**EMPLOYERS MUTUAL CASUALTY COMPANY, an Iowa corporation, subrogee of Miller–Dwan Medical Center, Respondent,**

v.

**A.C.C.T., INC., Appellant.**

No. C0–97–7.

Court of Appeals of Minnesota.

Sept. 9, 1997.

Review Granted Nov. 18, 1997.

Charles R. Tuffley, Michele A. Chapnick, Morrison, Mahoney & Miller, Southfield, MI; and Joseph F. Lulic, Hanson, Lulic & Krall, Minneapolis, for respondent.

Jennifer Kjos Fackler, Peter E. Lind, Foster, Waldeck & Lind, Ltd., Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and KALITOWSKI and THOREEN, JJ.*

## OPINION

KALITOWSKI, Judge.

Employers Mutual Casualty Company (insurer), as the insurer of Miller–Dwan Medical Center (owner), brought a subrogation action against A.C.C.T., Inc. (contractor) to recover losses incurred in connection with fire damages to the medical center. The district court denied the contractor's motion for summary judgment, but certified to this court as important and doubtful the question of whether the waiver clause of the contract between the owner and contractor bars the insurer's subrogation claim for damages allegedly caused by the contractor to property the contractor did not work on that was not the subject of the construction contract.

## FACTS

On June 15, 1993, Miller–Dwan Medical Center (owner) contracted with A.C.C.T., Inc. (contractor) to perform asbestos abatement in certain areas of the medical center. The contract is a pre-printed American Institute of Architects Abbreviated Owner–Contractor Agreement (AIA contract). Article 7 of the contract described the "Work" involved as follows:

> 7.4 The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

The parties allocated insurance responsibilities in the following manner:

> 17.1 The Contractor shall purchase * * * and maintain * * * insurance for protection from claims under workers' or workmen's compensation acts and other employee benefits acts which are applicable, claims for damages because of bodily injury, including death, and *from claims for damages, other than to the Work itself, to property which may arise out of or result from the Contractor's operations under the Contract,* whether such operations be by the Contractor or by a Subcontractor or any one directly or indirectly employed by any of them.

> 17.2 The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance. Optionally, the Owner may purchase and maintain other insurance for self-protection against claims which may arise from operations under the Contract. The Contractor shall not be responsible for purchasing and maintaining this optional Owner's liability insurance unless specifically required by the Contract Documents.

> 17.3 Unless otherwise provided, the Owner shall purchase and maintain * * * property insurance *upon the entire Work at the site to the full insurable value thereof. This insurance shall be on an all-risk policy form and shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of fire* and

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief.

17.6 The Owner and Contractor waive all rights against each other * * * *for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Article 17 or any other property insurance applicable to the Work * * *.*

(emphasis added). The owner elected not to purchase a separate "builder's risk" policy with coverage limited to "the entire Work at the site." Instead, the owner chose to rely on its existing "all-risk" property insurance to satisfy its obligations under article 17 to provide property insurance for the "Work."

On January 19, 1994, a fire broke out on the sixth floor of the building on which the contractor was working, causing damages not only to parts of the building covered by the contract but to other areas as well. The owner's insurance carrier, Employers Mutual Casualty Company (insurer), paid the owner for the damages, and then sued the contractor by way of subrogation for alleged negligence and breach of contract.

The contractor moved for summary judgment based on the waiver clause of the contract, and the insurer moved to amend the complaint to include an additional gross negligence claim. The district court denied both parties' motions and certified to this court as important and doubtful the application of the waiver clause of the contract.

### ISSUES

1. Does the waiver clause of the contract bar the insurer's subrogation claim for damages allegedly caused by the contractor to areas of the building not the subject of the construction contract?

2. Is the term "Work" ambiguous as to render summary judgment improper?

### ANALYSIS

■■■ On appeal from a summary judgment, the reviewing court must determine (1) whether there are any genuine issues of material fact, and (2) whether the district court

erred in its application of the law. *City of Virginia v. Northland Office Properties Ltd. Partnership,* 465 N.W.2d 424, 427 (Minn.App. 1991) (citation omitted). In reviewing the record, the court must view the evidence in the light most favorable to the party against whom summary judgment was granted. *Id.*

■■■ A court must interpret a contract according to the intent of the parties as manifested by the words used therein. *Dr. Ward's Medical Co. v. Kallio,* 173 Minn. 462, 463, 217 N.W. 369, 369 (1928). In construing a contract, a court should apply the construction that will give each part of the instrument some effect. *Independent Sch. Dist. No. 877 v. Loberg Plumbing & Heating Co.,* 266 Minn. 426, 436, 123 N.W.2d 793, 799–800 (1963). Whether a contract is ambiguous is a question of law. *City of Virginia,* 465 N.W.2d at 427 (citation omitted).

> The interpretation of a contract is a question of law if no ambiguity exists, but if ambiguous, it is a question of fact and extrinsic evidence may be considered. "On appeal, a reviewing court may make a determination of whether a contract is ambiguous without deference to the trial court's determination." "A contract is ambiguous if it is reasonably susceptible to more than one construction."

*Id.* (citations omitted).

### I.

A party may appeal to this court "if the trial court certifies that the question presented is important and doubtful, * * * from an order which denies a motion for summary judgment." Minn. R. Civ.App. P. 103.03(h). Because Minnesota courts have not considered the waiver clause contained in the AIA form contract and its interpretation affects significant rights of the parties, the district court properly certified the provision to this court for interpretation.

In the AIA contract, the owner and contractor in article 17.6 (the waiver clause), article 17.1 (requiring the contractor to provide insurance for non-Work property damage), and article 17.3 (requiring the owner to provide property insurance for the contractor's Work) have agreed on an allocation of

their respective risks and insurance obligations pertaining to the possibility of property damage occurring during the contract and to the contractor's potential liability resulting from its operations.

The insurer argues that under the contract the owner must provide property insurance protection covering the contractor's Work (article 17.3) and the contractor must provide liability insurance covering whatever property damage it may cause other than to the Work itself (article 17.1). The waiver clause, according to the insurer, does not bar the owner's insurer from proceeding against the contractor for damage to non-work property allegedly caused by the contractor's negligence.

The contractor contends that the broad language in the waiver clause of the contract prevents the owner's insurer from proceeding against the contractor for its negligence not only for damage occurring to the Work but also to areas outside the Work. Thus, under these facts, where a fire allegedly arising out of the contractor's operations resulted in damage both to the Work and areas outside the Work, the contractor argues the owner's insurance carrier's right to subrogate is barred.

■ The district court agreed with the insurer's position and denied the contractor's motion for summary judgment. In reaching its decision, the district court relied on *S.S.D.W. Co. v. Brisk Waterproofing Co.*, 76 N.Y.2d 228, 557 N.Y.S.2d 290, 556 N.E.2d 1097 (1990), which concerned the same article 17 in a similar fact situation. In *S.S.D.W. Co.*, the owner of an apartment building contracted with a builder to do some corrective work, and a fire broke out causing extensive damages not only to areas of the building covered by the contract but to other areas as well. After paying the owner for the damages, the owner's insurer filed a subrogation action against the builder seeking reimbursement. The court construed the standard AIA contract and concluded that because the intent of the waiver provision was limited to waiving claims to the work, the insurer could bring a suit against the builder for negligent damage to property outside the scope of the work. *Id.* at 233–34, 557 N.Y.S.2d at 293,

556 N.E.2d at 1100. The court analyzed the waiver clause in this manner:

> The waiver clause (art. 17.6) bars the claim of the owner's subrogee to the extent that the damages sought are covered either by: (1) "insurance obtained pursuant to [art.17]" or (2) "any other property insurance applicable to the Work." The first alternative (insurance obtained pursuant to art. 17) refers to insurance which the owner has procured under article 17.3 in which it is obligated to provide insurance "upon the entire Work at the site" and to include therein the interests of the contractor and subcontractors "in the Work." The second speaks for itself. It refers only to other insurance "applicable to the Work." It makes no difference whether the policy under which subrogation is sought is one which the owner purchased specifically to insure the Work pursuant to article 17.3 or some other policy covering the owner's property in which the owner has also provided coverage for the Work. In either event, the waiver clause, if given its plain meaning, bars subrogation only for those damages covered by insurance which the owner has provided to meet the requirement of protecting the contractor's limited interest in the building—i.e., damages to the Work itself. On the other hand, no wording in article 17 supports the view urged by defendants, that the waiver in article 17.6 includes not only damage to the Work itself but encompass all damages flowing from the Work.

*Id.* at 233–34, 557 N.Y.S.2d at 292–93, 556 N.E.2d at 1099–1100 (alteration in original). The court further reasoned that this construction of the contract gives full effect to the bargain concerning the parties' respective insurance responsibilities set forth in the AIA contract, and is consistent with case law recognizing the difference in the respective interests of the owner and the contractor under the owner's property insurance policy during the course of construction. *Id.* at 234–35, 557 N.Y.S.2d at 293, 556 N.E.2d at 1100.

We conclude the holding of the New York court and its underlying analysis apply here. Not only are the facts of the two cases

strikingly similar, but the contract provisions regarding the parties' insurance obligations are identical. For the reasons given by the New York court, we conclude the district court properly held that the insurer's subrogation claim against the contractor for damage to non-work property is not barred by the waiver clause.

In so holding, we recognize a California court took a different approach in *Lloyd's Underwriters v. Craig and Rush, Inc.,* 26 Cal.App.4th 1194, 32 Cal.Rptr.2d 144 (1994), a case on which the contractor relies. In *Lloyd's Underwriters,* the owner hired the contractors to repair the roof of the owner's facility. The parties used a similar AIA form that contained article 17.3 requiring the owner to obtain insurance applicable to the work. The language in the waiver provision was identical to that contained in the waiver provision here. The owner there chose not to obtain separate insurance (i.e., "property insurance obtained pursuant to this Paragraph 17.3") but instead relied on its existing policy (i.e., "other property insurance applicable to the Work"). During the job, rain caused damage to the interior of the facility. The owner's insurer paid for the damage, and then filed a subrogation claim against the contractors. The insurer sought to avoid the waiver clause by arguing the owner agreed to insure only the "Work" and to waive rights to the extent the "Work" was insured. The court rejected the insurer's argument, stating:

> This contention, however, ignores the language defining the scope of claims falling within the waiver clause. The waived claims are not defined by what property is harmed (i.e., "any injury to the Work"); instead, the scope of waived claims is delimited by the source of any insurance proceeds paying for the loss (i.e., whether the loss was paid by a policy "applicable to the Work").

*Lloyd's Underwriters,* at 1200, 32 Cal. Rptr.2d at 148. The court concluded:

> The contract clearly provides: "Owner waive[s] all rights against [Contractors] * * * for damages * * * to the extent covered by property insurance obtained pursuant to this Paragraph 17.3 or other property insurance applicable to the Work." The plain import of the emphasized language is that so long as a policy of insurance "applicable to the Work" pays for the damage, the waiver applies. Appellants do not dispute that their policies (1) were "applicable to the Work" and (2) "covered" or paid for the loss. Satisfaction of these two criteria allows us to conclude the waiver applies.

*Id.* at 1198, 32 Cal.Rptr.2d at 146 (alteration in original).

In denying the insurer's claim, the California court rejected the approach adopted by the New York court in *S.S.D.W. Co.* concluding the New York court ignored the fact the waiver provision defined waived claims not by what property is damaged but by which policy provided indemnification against the loss. *Id.* at 1201, 32 Cal.Rptr.2d at 148.

After reviewing the different analyses of the New York and California courts, we reject the contractor's position based on the California approach for the following reasons: (1) the contractor's interpretation of the waiver clause is not consistent with article 17.1, which requires the contractor to obtain insurance for protection against claims for damages to property, other than to the Work itself, that may arise out of or result from the contractor's operations; (2) the contractor's position renders the language "applicable to the Work" contained in the waiver clause superfluous, in contradiction to the rule that a contract is to be construed to give effect to every word and phrase. *Casey v. Brotherhood of Locomotive Firemen & Enginemen,* 197 Minn. 189, 193, 266 N.W. 737, 739 (1936); (3) the contractor's interpretation of the waiver clause is inconsistent with the rule that absent a clear contractual intent of waiver, a negligent party should be held liable for its negligence. *Independent School District No. 877,* 123 N.W.2d at 799; (4) the contractor is not a co-insured under the owner's preexisting insurance policy with the owner and there is no clear intent to waive all rights for damages caused by fire to non-work property; and (5) as a policy matter, the contractor's position does not encourage the contractor to exercise due care in its operations to avoid damages to the non-work property.

The contractor further argues that this case is controlled by *Independent Sch. Dist. No. 877*, where the supreme court held that a contractual provision protecting parties against liability resulting from their own negligence does not contravene public policy. *Id.* at 434, 123 N.W.2d at 798–99. We conclude *Independent Sch. Dist. No. 877* is not applicable because in that case the contractors contracted to work on the entire building, which was damaged by fire, and the waiver clause at issue was different than the waiver clause here.

## II.

The district court denied the contractor's summary judgment motion because the word "Work" as used in article 17.6 is ambiguous. Article 7 of the contract defines "Work" to mean

> the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. *The Work may constitute the whole or a part of the Project.*

(emphasis added). The district court concluded the definition of "Work" is ambiguous because it is not clear whether the waiver exculpates the contractor "from damages covered by property insurance covering all areas worked in by the contractor at any time during the two-year contract" or "only to the 'work' being performed at the time the fire broke out." We agree. Because the term "Work" is ambiguous, the interpretation of the term is a question of fact and summary judgment is improper. *See City of Virginia*, 465 N.W.2d at 427 (if a contract is ambiguous, summary judgment is improper).

## DECISION

Our answer to the certified question is that the waiver clause of the contract does not bar the insurer's subrogation claim for damages allegedly caused by the contractor to areas of the building not the subject of the construction contract. The district court did not err in denying summary judgment because: (1) the waiver clause of the contract does not protect the contractor from liability for damages to property not the subject of the construction contract; and (2) the term "Work" is ambiguous.

**Affirmed.**