[Cite as *Westfield Ins. Group v. Affinia Dev., L.L.C.*, 2012-Ohio-5348.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WESTFIELD INSURANCE GROUP | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Sheila G. Farmer, J. |
| -vs- | : | |
| | : | Case No. 12-CA-2 |
| AFFINIA DEVELOPMENT, LLC, ET AL. | : | |
| | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Knox County Court of Common Pleas, Case No. 10OT04-0209

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: November 14, 2012

APPEARANCES:

For Appellant:

MICHAEL W. DEWITT
280 N. High St.
Suite 920
Columbus, OH 43215

DANIEL J. DE LUCA
518 Township Line Road
Suite 300
Blue Bell, PA 19422

For Appellee-Affinia Development, LLC:

ALAN E. MAZUR
140 E. Town St.
Suite 1015
Columbus, OH 43215

For Appellee-Jan Gabrysch d/b/a Intex:

HEATHER R. ZILKA
M. ANDREW SWAY
65 E. State St., Suite 2000
Columbus, OH 43215

*Delaney, P.J.*

{¶1} Plaintiff-Appellant Westfield Insurance Group appeals the August 12, 2011 and January 10, 2012 judgment entries of the Knox County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee Affinia Development, LLC and Defendant-Appellee Jan Gabrysch d/b/a Intex.

## FACTS AND PROCEDURAL HISTORY

{¶2} In July 2009, Knox County acquired ownership of a building located at One Avalon Road, Mount Vernon, Ohio ("the building"). The building was purchased for $187,000.00. Knox County conveyed the building to the Mid-East Ohio Regional Council (MEROC) for use as its headquarters.

{¶3} MEROC procured commercial property insurance coverage for the building through Plaintiff-Appellant Westfield Insurance Group under Policy No. BOP 3 098 240, effective from July 9, 2009 to July 9, 2010. The Westfield policy insured both the structure and the contents of the building. Property coverage for the building was $815,000.00.

{¶4} On November 6, 2009, MEROC as Owner entered into a contract with Defendant-Appellee Affinia Development, LLC, as Contractor stating "[t]he scope of proposed construction includes renovations and improvements to existing-building located at 1 Avalon Rd., Mount Vernon, Ohio. Work includes, but may not be limited to, roof replacement, storm water improvements to the site, building ADA accessibility including access to building and restrooms, floor plan modifications for new layout including necessary alterations to plumbing, h.v.a.c. and electrical." The contract amount was $201,635.00.

{¶5} The parties utilized an American Institute of Architects contract, AIA Document A101-2007, entitled "Standard Form of Agreement Between Owner and Contractor." The contract included AIA Document A201-2007, entitled "General Conditions of the Contract for Construction." (Article §9.1.2). These documents shall be hereinafter referred to as the "Contract."

{¶6} Construction pursuant to the Contract commenced. Affinia subcontracted with Defendant-Appellee Jan Gabrysch d/b/a Intex to stain the trim woodwork.

{¶7} The MEROC building is a three-story structure. The lower level was renovated first. By March 5, 2010, the remodeling work on the building was substantially complete. The lower level was fully completed and being occupied by MEROC as its administrative offices. The second floor renovations were in the final stages. The third floor contained an apartment and by March 5, 2010, renovations had not begun on that level. Intex workers did some staining work on Friday, March 5, 2010 and left the building that evening. On the night of Saturday, March 6, 2010, a fire broke out in the reception area of the second floor. The fire caused damage to the entire structure. The Mount Vernon Fire Department investigator could not determine the cause of the fire.

{¶8} Westfield paid MEROC in excess of $100,000 pursuant to the terms of the commercial property insurance for the damages caused by the fire.

{¶9} On April 5, 2010, Westfield, as subrogee of MEROC, filed a complaint against Affinia and Gabrysch in the Knox County Court of Common Pleas claiming

negligence, breach of contract, and breach of warranty. Westfield alleged the fire was caused by the negligence of Affinia and Gabrysch.

{¶10} Affinia moved for summary judgment on April 11, 2011. In its motion for summary judgment, Affinia argued it was entitled to judgment as a matter of law as to all claims because the Contract between MEROC and Affinia contained a waiver of subrogation clause, preventing Westfield from pursuing its claims against Affinia. Gabrysch moved for summary judgment on August 15, 2011, arguing the waiver of subrogation clause found in the Contract applied to the subcontractor, similarly preventing Westfield from pursuing its claims against Gabrysch.

{¶11} The trial court granted the motions for summary judgment on August 12, 2011 and January 10, 2012. It is from these decisions Westfield now appeals.

## ASSIGNMENTS OF ERROR

{¶12} Westfield raises two Assignments of Error:

{¶13} "I. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO DEFENDANT-APPELLEE AFFINIA DEVELOPMENT, LLC.

{¶14} "II. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO DEFENDANT-APPELLEE JAN GABRYSCH D/B/A INTEX."

## ANALYSIS

### STANDARD OF REVIEW

{¶15} The trial court's decision to grant judgment in favor of Affinia and Gabrysch was rendered through Civ.R. 56. We review a summary judgment de novo and without deference to the trial court's determination. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same

standard of review as the trial court and conducts an independent review, without deference to the trial court's determination. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. *Westbrook v. Swiatek*, 5th Dist. No. 09CAE09–0083, 2011–Ohio–781, ¶ 43.

{¶16} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

{¶17} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

*WESTFIELD'S ARGUMENTS ON APPEAL*

{¶18} Westfield raises three arguments as to why the language of the waiver of subrogation clauses found within the AIA Contract do not bar Westfield's claim for damages to the building: 1) the waiver of subrogation clause is vague and ambiguous, requiring the court to examine the parties' intent; 2) the waiver of subrogation clause waives Westfield's right to sue for damages to the Work, but does not waive

Westfield's right to sue for damages to non-Work property; and 3) the waiver of subrogation clause is against public policy.

{¶19} We address Westfield's second argument because it is dispositive of this appeal.

{¶20} While the courts of Ohio have previously reviewed terms of AIA contracts, the specific arguments raised by Westfield are matters of first impression in the State of Ohio. As such, we look to other jurisdictions to guide our decision in whether the waiver of subrogation clause bars Westfield's claim for damages. During our analysis of complex contract documents and discrete examination of words and intent, we are lightly cautioned on the subject matter of AIA contracts by our brethren in the State of California: "Appellate counsel for both sides have done an outstanding job, resulting in briefs that have been more than ordinarily helpful to the court. The fact remains that the issues are far from enthralling; they demand an almost microscopic examination of dry, lengthy contract documents. As we embark on the resolution of these issues, then, we think it only fair to suggest that the reader might want to be sitting in a comfortable chair, with a cup of strong coffee nearby." *American Guarantee and Liability Ins. Co. v. ADP Marshall, Inc.*, Cal. App. 4 Dist. No. E041182, 2007 WL 4239987 (Dec. 4, 2007).

*CONTRACT INTERPRETATION*

{¶21} The parties' arguments as to the Contract's waiver of subrogation clauses require this Court to engage in contract interpretation. Contractual subrogation clauses are controlled by the usual rules of contract interpretation. *Acuity v. Interstate Const., Inc.*, 11th Dist. No. 2007-P-0074, 2008-Ohio-1022, ¶ 12 citing

*Blue Cross & Blue Shield Mut. of Ohio v. Hrenko,* 72 Ohio St.3d 120, 122, 647 N.E.2d 1358 (1995). When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Sunoco, Inc. (R & M) v. Toledo Edison, Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37 citing *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

*RELEVANT CONTRACT PROVISIONS*

{¶22} In their motions for summary judgment, Affinia and Gabrysch referred to the Contract as barring Westfield's claims for subrogation. AIA Document A101-2007 incorporates the terms of AIA Document A201-2007. It is within AIA Document A201-2007 we find the relevant provisions to this appeal.

<u>Commonly Used Terms</u>

{¶23} We first review three relevant terms used by the Contract in defining the obligations of the Owner and Contractor – "Contract," "Work," and "Project." AIA Document A201-2007 states as to "Contract:" "The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations,

representations or agreements, either written or oral." AIA Document A201-2007 defines "Work" under §1.1.3 as meaning "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project." AIA Document A201-2007 defines "Project" under §1.1.4 as meaning "the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by separate contractors."

<u>Contractor's Obligations Under the Contract</u>

{¶24} Article 11 of AIA Document A201-2007, entitled "Insurance and Bonds," outlines the insurance obligations for the Contractor and Owner.

{¶25} §11.1 of AIA Document A201-2007 establishes the Contractor's responsibility to procure liability insurance. Article 10 of AIA Document A101-2007 requires the Contractor to purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201-2007. §11.1 states:

> The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations and completed operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone

directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

\* \* \*

.5 Claims for damages, other than to the Work itself, because of injury or destruction of tangible property, including loss of use resulting therefrom;

\* \* \*

§11.1.4 The Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, the Architect and the Architect's Consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

<u>Owner's Obligations Under the Contract</u>

{¶26} Article §11.3 establishes the property insurance the Owner is required to purchase under the Contract. §11.3 also contains the waiver of subrogation clause relevant to this appeal:

§11.3.1 Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount

of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, compromising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.3 to be covered whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

§11.3.1.1 Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

§11.3.1.2 If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the

amount described above, the Owner shall so inform the Contractor in writing prior to the commencement of the Work. The Contractor may then effect insurance that will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

* * *

§11.3.5 If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation or otherwise.

* * *

§11.3.7 WAIVERS OF SUBROGATION

The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and

employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of insurance held by the Owner as fiduciary. The Owner or the Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

*GENERAL VALIDITY OF SUBROGATION CLAUSES*

{¶27} "In Ohio, there are three distinct kinds of subrogation: legal, statutory, and conventional. Legal subrogation arises by operation of law and applies when one person is subrogated to certain rights of another so that the person is substituted in

the place of the other and succeeds to the rights of the other person.  *State v. Jones* (1980), 61 Ohio St.2d 99, 100–101, 15 O.O.3d 132, 133, 399 N.E.2d 1215, 1216–1217.  Statutory subrogation is a right that exists only against a wrongdoer.  Conventional subrogation is premised on the contractual obligations of the parties, either express or implied.  The focus of conventional subrogation is the agreement of the parties.  *Id.* at 101, 15 O.O.3d at 133, 399 N.E.2d at 1217."  *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko*, 72 Ohio St.3d 120, 121, 647 N.E.2d 1358, (1995).

{¶28} Waiver of liability clauses are valid expressions of the parties' freedom to contract.  *Hanover Ins. Co. v. Cunningham Drug Stores*, 8th Dist. No. 44066, 1982 WL 5341, *3 (May 6, 1982).  Ohio courts have held that "such a clause * * * which mutually prohibits the owner [and] contractor * * * from enforcing their rights against each other for damages caused by fire or other perils covered by insurance * * * is not void as being against public policy."  *Acuity v. Interstate Const., Inc.*, 11th Dist. No. 2007-P-0074, 2008-Ohio-1022, ¶ 13 quoting *Insurance Co. of North America v. Wells*, 35 Ohio App.2d 173, 177, 300 N.E.2d 460 (10th Dist. 1973).  Ohio courts have repeatedly held that waiver-of-subrogation provisions are valid and enforceable. *Nationwide Mutual Fire Ins. Co. v. Sonitrol, Inc. of Cleveland*, 109 Ohio App.3d 474, 482, 672 N.E.2d 687 (8th Dist. 1996); *Len Immke Buick, Inc. v. Architectural Alliance*, 81 Ohio App.3d 459, 464, 611 N.E.2d 399 (10th Dist. 1992).

{¶29} "It is axiomatic that an insurer-subrogee cannot succeed to or acquire any right or remedy not possessed by its insured-subrogor."  *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 537 N.E.2d 624 (1989), paragraph one of the syllabus.

*SCOPE OF WAIVER OF SUBROGATION – MINORITY VS. MAJORITY VIEW*

{¶30} Westfield argues that while §11.3.7 of the Contract may waive Westfield's right to sue for damages to the Work, Westfield did not waive its right to sue Affinia and Gabrysch for damages to the non-Work property. Affinia and Gabrysch argue the waiver of subrogation clause bars all recovery for damages to property, regardless if it is Work or non-Work property. "Work" is defined as, "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project." The Project is the total construction of which the Work is performed under the Contract. The Contract stated the scope of construction included: "renovations and improvements to existing-building located at 1 Avalon Rd., Mount Vernon, Ohio. Work includes, but may not be limited to, roof replacement, storm water improvements to the site, building ADA accessibility including access to building and restrooms, floor plan modifications for new layout including necessary alterations to plumbing, h.v.a.c. and electrical."

{¶31} On the date of the fire, the renovations to the first level were completed. The second level was in the process of being renovated. The third floor was not renovated.

{¶32} The waiver of subrogation provision in §11.3.7 states in relevant part, "the Owner [Westfield as subrogee] and Contractor [Affinia] waive all rights against *** each other and any of their subcontractors [Gabrysch] * * * for damages caused by fire

or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work."

{¶33} §11.3.1 required MEROC to purchase a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract sum compromising the total value for the entire Project at the site. MEROC did not purchase a separate builder's risk policy covering the Work, but instead relied upon its commercial property insurance coverage through Westfield. The Contract amount was $201,635.00. The amount of insurance coverage on the building was $815,000.00. §11.3.5 states that if the Owner insures properties at or adjacent to the site by property insurance separate from those insuring the Project, the Owner shall waive all rights in accordance with the terms of §11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance.

{¶34} As stated above, the argument raised by Westfield is a matter of first impression in the State of Ohio. The Eleventh District Court of Appeals in *Acuity v. Interstate Const., Inc.*, 11th Dist. No. 2007-P-0074, 2008-Ohio-1022, reviewed an AIA contract and the scope of the waiver of subrogation provision, but under different circumstances. In *Acuity*, the owner and contractor entered into a construction contract utilizing the AIA contract with the waiver of subrogation provision recited above. The contractor finished construction on the project in 1998. In 2001 and 2003, the owner purchased insurance covering property damage. Water pipes froze and burst at the property, causing damage to the property in 2002 and 2004. *Id.* at ¶ 2-3. The insurer filed an action as subrogee of its insured to recover its damages. The issue in that case was whether the waiver of subrogation provision contained in the

AIA contract between the owner and contractor applied to damage covered by *insurance purchased after construction was completed.  Id.* at ¶ 1.  The Eleventh District Court of Appeals reviewed the same waiver of subrogation clause as found in the present case, but answered a different question as to the scope of the waiver of subrogation provision from that raised in our case.  In our case, there is no argument that MEROC purchased insurance after the completion of construction; MEROC purchased the property insurance before construction.  We look to *Acuity* for guidance but it is not dispositive of this appeal.

{¶35} We therefore look to other jurisdictions to examine the issue of the scope of the waiver of subrogation clause in the AIA contract.  As pointed out by the parties, other state courts have ruled on this issue in such a manner as to result in a "minority" and "majority" approach.  In *Trinity Universal Ins. Co. v. Bill Cox Const.*, 75 S.W.3d 6 (Tex.Civ.App. 2001), the Texas Court of Appeals summarized the two approaches:

> Courts addressing similar AIA contracts agree that the contract bars the owner, or its subrogee insurance company, from bringing suit against either general contractors or subcontractors for damages caused by fire or other peril.  However, the courts disagree as to the scope of the waiver. A review of cases from other jurisdictions involving language identical to or substantially similar to the language in the AIA Agreement here reveals two approaches to the question of when an insurer's subrogation rights are barred: one approach makes a distinction between Work (as that word is defined in the contract) and non-Work property and limits the scope of the waiver to damages to the Work; and the second

approach draws no distinction between Work and non-Work, but instead, limits the scope of the waiver to the proceeds of the insurance provided under the contract between the owner and contractor.

The courts that interpret the scope of the waiver by drawing a distinction between Work and non-Work property ask only whether the Work was damaged -- if yes, then the waiver applies; if no, then the waiver does not apply. *See Fidelity & Guar. Ins. Co. v. Craig–Wilkinson, Inc.*, 948 F.Supp. 608, 611 (S.D.Miss.1996), aff'd, 101 F.3d 699 (5th Cir.1996) (plaintiff's claim for damage to non-work property not barred because contractual waiver provided solely for waiver of claims for damage to Work); *Town of Silverton v. Phoenix Heat Source Sys., Inc.*, 948 P.2d 9, 12 (Colo.Ct.App.1997) (waiver limited to value of work performed under contract and inapplicable to other parts of town hall damaged by fire); *S.S.D.W. Co. v. Brisk Waterproofing Co.*, 76 N.Y.2d 228, 557 N.Y.S.2d 290, 292–93, 556 N.E.2d 1097 (1990) (waiver applies only to damage to areas within the limits of the Work). Under this interpretation, "It makes no difference whether the policy under which subrogation is sought is one which the owner purchased specifically to insure the Work pursuant to [the contract] or some other policy covering the owner's property in which the owner has also provided coverage for the Work. In either event, the waiver clause, if given its plain meaning, bars subrogation only for those damages covered by insurance which the owner has provided to meet the requirement of protecting the

contractor's limited interest in the building- i.e., damages to the Work itself." *S.S.D.W.*, 557 N.Y.S.2d at 292–93, 556 N.E.2d 1097.

However, the majority of jurisdictions considering the issue criticize the work/non-work distinction as ignoring the language defining the scope of claims falling within the waiver clause. These courts interpret the scope of the waiver as limited to the proceeds of the insurance provided under the contract, and ask whether the owner's policy was broad enough to cover both Work and non-Work property and whether the policy paid for damages. *ASIC II Ltd. v. Stonhard, Inc.*, 63 F.Supp.2d 85, 92 (D.Me.1999) (waiver clause did not restrict waiver of damages to Work but to proceeds of any insurance provided under the contract); *Employers Mut. Cas. Co. v. A.C.C.T., Inc.*, 580 N.W.2d 490, 493 (Minn.1998) (if owner relies on an existing policy broad enough to cover the Work and the non-Work property, it waives right to sue for all damages so long as that damage is covered by the policy); *Lloyd's Underwriters v. Craig and Rush, Inc.*, 26 Cal.App.4th 1194, 32 Cal.Rptr.2d 144, 146, 148 (1994) (waiver limited by the coverage afforded by the identified policy and not by the nature of the structure harmed); *Haemonetics Corp. v. Brophy & Phillips Co.*, 23 Mass.App.Ct. 254, 501 N.E.2d 524, 526 (1986) (waiver of rights extends to proceeds of any insurance provided under the contract). "The plain import of the emphasized language is that so long as a policy of insurance 'applicable to the Work' pays for the damage, the waiver applies.... The waived

claims are not defined by what property is harmed ( i.e., 'any injury to the Work'); instead, the scope of waived claims is delimited by the source of any insurance proceeds paying for the loss ( i.e., whether the loss was paid by a policy 'applicable to the Work')." *Lloyd's Underwriters*, 32 Cal.Rptr.2d at 148; *see also ASIC II Ltd.*, 63 F.Supp.2d at 92–93 (explaining that waiver form used in *S.S.D.W.* contract was later revised to overcome the holding in this case); *A.C.C.T.*, Inc., 580 N.W.2d at 493 (adopting reasoning of *Lloyd's Underwriters* ); *Haemonetics*, 501 N.E.2d at 526.

*Trinity Universal Ins. Co.*, 75 S.W.3d 6, 11-12.; *Accord Lexington Ins. Co. v. Entrex Communication Servs., Inc.*, 275 Neb. 702, 749 N.W.2d 124 (Neb. 2008).

<u>Westfield Supports the First Approach</u>

{¶36} Westfield urges this Court to adopt the first approach, which has been characterized as the minority view.  In support of its argument, Westfield refers this Court to *Copper Mountain, Inc. v. Industrial Systems, Inc.*, 208 P.3d 692 (Co. 2009). In that case, the owner hired the contractor to perform renovations and build an addition to a ski lodge.  The parties used the AIA contract with substantially the same provisions as the Contract in the present case.  Pursuant to the terms of the AIA contract, the owner added an endorsement to its existing insurance policy to cover the Work, so that the insurance policy insured the Work and the existing ski lodge property.  While the contractor performed the Work, a fire broke out in the ski lodge and caused significant damage to the existing lodge and its contents.  All real and

personal property were covered under the owner's insurance policy. The owner sought contribution from the contractor for the damage to the property.

{¶37} Upon review, the Supreme Court of Colorado reversed the decision of the court of appeals that found the waiver of subrogation clause in the AIA contract precluded the owner's claims against the contractor. The Supreme Court analyzed the AIA contract and waiver clauses as to the issue of whether the owner waived its right to sue the contractor for damages to its non-Work property, even though the owner insured the property under an existing policy covering Work property. *Id.* at 698. The Supreme Court adopted the minority approach to find the language of the waiver of subrogation clause did not bar the owner's claim for damages to its non-Work property. In making its decision, the Supreme Court cited the New York Court of Appeals in *S.S.D.W. Co. v. Brisk Waterproofing Co.*, 76 N.Y.2d 228, 556 N.E.2d 1097 (1990):

> The court held that the plain meaning of the phrase "to the extent covered by insurance obtained pursuant to this Article or any other property insurance applicable to the Work" was that the waiver only applies to damages to the Work. *Id.*, 557 N.Y.S.2d 290, 556 N.E.2d at 1099–1100. The court stated:

> It makes no difference whether the policy under which subrogation is sought is one which the owner purchased specifically to insure the Work pursuant to [the article requiring the owner to procure property insurance] or some other policy covering the owner's property in which the owner has also provided coverage for the Work. In either event, the

waiver clause, if given its plain meaning, bars subrogation only for those damages covered by insurance which the owner has provided to meet the requirement of protecting the contractor's limited interest in the building—i.e., damages to the Work itself. *Id.*, 557 N.Y.S.2d 290, 556 N.E.2d at 1100. The court found that this interpretation gives "full effect" to the contractual provision requiring the contractor to obtain liability insurance protecting it from claims for damages to non-Work property. *Id.*

*Copper Mountain* at 698 quoting *S.S.D.W. Co.* at 1099-1100.

{¶38} The Supreme Court in Copper Mountain ultimately concluded the plain meaning of the AIA contract meant the subrogation clause applied solely to the insurance "applicable to the Work;" therefore, the contractor was liable to the owner for damage to non-Work property.

### Affinia and Gabrysch Support the Second Approach

{¶39} Affinia and Gabrysch argue this Court should adopt the majority view as held in *Trinity Universal Ins. Co. v. Bill Cox Const., supra* and *Lexington Ins. Co. v. Entrex Communication Servs., Inc.,* 275 Neb. 702, 749 N.W.2d 124 (Neb. 2008). In those cases, the courts determined the waiver applied to all damages insured by the owner's property insurance policy, regardless of whether they represented damages to the Work or non-Work property.

{¶40} In *Lexington Ins. Co.,* the owner contracted with the contractor to modify a television broadcast tower. The owner and contractor utilized the AIA contract with substantially similar waiver of subrogation provisions. The owner did not obtain a

specific insurance policy to cover the Project, but instead relied upon its existing "all-risk" property insurance policies. The television broadcast tower collapsed, causing damages to Work and non-Work property.

{¶41} The Supreme Court of Nebraska in *Lexington Ins. Co., supra* analyzed the question of whether the waiver of subrogation was limited to damages to the Work or whether it also applied to non-Work property. In finding the waiver applied to damages to both Work and non-Work property, the Supreme Court analyzed the majority approach as follows:

> The California Court of Appeal adopted this approach in *Lloyd's Underwriters v. Craig and Rush*, 26 Cal.App.4th 1194, 32 Cal.Rptr.2d 144 (1994). Like Hearst [the owner], the owner in *Lloyd's Underwriters* elected not to purchase a separate "builder's risk" policy with coverage limited to the construction work. Instead, the owner chose to rely on its existing "all-risk" property insurance to satisfy its obligations under the contract to provide property insurance for the Work. Non–Work property was damaged while the contractor was repairing the roof of the owner's facility. The owner's insurers argued that these damages, although insured, fell outside the waiver of subrogation.
>
> The *Lloyd's Underwriters* court read the waiver's language to mean that "so long as a policy of insurance 'applicable to the Work' pays for the damage, the waiver applies." The court observed that the owner's insurers "[did] not dispute that their policies (1) were 'applicable to the Work' and (2) 'covered' or paid for the loss." The court reasoned

that satisfaction of these two criteria allowed the court to conclude the waiver applied. Stated another way, the *Lloyd's Underwriters* court essentially concluded that if a policy covering the Work paid for the losses, the parties waived subrogation for those losses, regardless of whether they were damages to the Work or non-Work property.

Another case often cited for the majority approach is *Haemonetics Corp. v. Brophy & Phillips Co.*, 23 Mass.App. 254, 501 N.E.2d 524 (1986). There, the owner also relied on an existing property insurance policy to meet its obligation to provide property insurance covering the Work. During construction, a fire damaged non-Work property, and the owner received insurance proceeds to cover the damage. The owner later argued that the parties' contract required only that it maintain property insurance on the Work, so the waiver applied only to damages to the Work property. The court disagreed, reasoning:

["]The preexisting insurance policy ... was the insurance the owner chose to provide to comply with § 11.3 [here subparagraph 11.4.1] even though that policy may have been more extensive than what was required. By the terms of [the waiver of subrogation provision], the waiver of rights extends to the proceeds of any insurance provided under § 11.3.["] *Haemonetics Corp.*, 23 Mass.App. at 257, 501 N.E.2d at 526.

The *Haemonetics Corp.* and *Lloyd's Underwriters* courts reached the same conclusion, but with different rationales. Again, for clarification, the waiver applies to the extent losses are covered by (1) insurance

obtained to meet the owner's obligation to acquire property insurance covering the Project or (2) "other property insurance applicable to the Work." The *Haemonetics Corp.* court reasoned that the owner's preexisting policy fell within the first alternative as the policy the owner chose to provide to comply with the contract. In contrast, the *Lloyd's Underwriters* court reasoned that the owner's preexisting policy came within the second alternative as "other property insurance applicable to the Work." Despite their different classifications of the policies, both courts decided the owner's preexisting policy fell within the waiver of subrogation clause. The courts concluded that the scope of the waiver clause was not defined by the property damaged, but, rather, by the extent the damages were covered by those policies described in the clause: All losses covered by those policies were subject to the waiver, whether those losses related to the Work or non-Work property.

(Footnotes omitted.) *Lexington Ins. Co.*, 275 Neb. 702, 715-717, 749 N.W.2d 124, 132-134.

<u>The Majority Approach Applies to the Present Case</u>

{¶42} We find the reasoning adopted by the majority of jurisdictions addressing this issue to be persuasive and adopt it in resolution of this case. The second approach is consistent with the plain and unambiguous language of the Contract and furthers the purpose of the waiver clause as a risk-shifting provision. The Contract defined the waived claims by the source of the insurance proceeds, not by the

property damaged. It is not relevant to the analysis as to whether the damage was to Work or non-Work property. §11.3.5 of the Contract states in relevant part:

> If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, * * * the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance. * * *

{¶43} In *Lexington Ins. Co.* and *Lloyd's Underwriters* both interpreted this provision to mean "if the owner acquires a separate property insurance policy to cover non-Project property -- a policy that did not cover the Project or Work property -- and the non-Project property is damaged, the owner waives subrogation rights for the insurer as to those damages. So even though the damage occurred to non-Work property, the owner waived subrogation rights because the damages were insured. This provision shows that the contracting parties were not opposed to waiving damages to non-Work property." *Lexington Ins. Co.*, 275 Neb. 702, 717-718, 749 N.W.2d 124, 135 citing *Lloyd's Underwriters, supra*.

{¶44} Further, this approach comports with the Contract's allocation of insurance responsibilities and the language defining the scope of claims falling within the waiver clause. *Lexington Ins. Co.*, 275 Neb. 702, 719, 749 N.W.2d 124. Under §11.1, Affinia was required to obtain liability insurance covering claims for damages to non-Work property, while §11.3.1 required MEROC to obtain property insurance covering the Project (Work). The Contract does not define waived claims by the

characterization of the property harmed (i.e. "any injury to the Work"); but rather, claims are limited by the source of the insurance proceeds paying for the loss (i.e., whether the loss was paid by a policy "applicable to the Work").

{¶45} Finally, our decision to adopt the majority approach is supported by policy considerations. Waiver of subrogation is useful in construction contracts because it avoids disrupting the project and eliminates the need for lawsuits because it offers certainty as to the liability of the parties. As demonstrated in the present case, by applying the waiver to all losses covered by the owner's property insurance, the parties avoid the predictable litigation over liability issues and whether the claimed loss was damage to Work or non-Work property. *Lexington Ins. Co., supra*; *Accord Haemonetics Corp., supra*. The Contract stated, "[the] scope of proposed construction includes renovations and improvements to existing-building located at 1 Avalon Rd., Mount Vernon, Ohio. Work includes, but may not be limited to, roof replacement, storm water improvements to the site, building ADA accessibility including access to building and restrooms, floor plan modifications for new layout including necessary alterations to plumbing, h.v.a.c. and electrical." There would most likely be lengthy litigation to discern Work from non-Work as stated in the general language of the Contract from the factual evidence.

{¶46} As expressed by the Judge Alexander in his *S.S.D.W. Co.,* dissent:

> The majority holds today that the subrogation waiver clause in this standard American Institute of Architects (AIA) form contract does not bar the owner's insurer from seeking recovery from the contractor for property damage to the owner's building so long as the damage is not to

the actual work to be performed under the contract.  This limited construction of the subrogation waiver clause ... undermines the very purpose of the clause.  Rather than promoting certainty as to the liability of the parties to these standard contracts, the majority's construction of this standard waiver clause invites litigation as to whether the damages in any particular case fall within the scope of the work to be performed under the contract.  In my view, a construction of the clause to bar the owner from seeking all damages as to which it has obtained insurance under the contract, thereby barring any subrogation action by the owner's insurer, best effectuates the intent of the parties to the contract.

* * *

* * *

* * * [T]hese subrogation waiver clauses are intended to avoid litigation over claims for damages while also protecting the parties by "in effect simply requir[ing] one of the parties to the contract to provide insurance for all of the parties."  Here, it is the owner who was required to insure against damage to the building and to waive all claims against the contractor for losses covered by that insurance.  I agree with those courts holding that in these circumstances the parties have agreed that the owner's recovery for these losses is limited to its insurance proceeds and neither the owner, nor its insurer (as subrogee) has any cause of action against the contractor.  * * *

* * *

* * * The limited construction of the subrogation waiver clause adopted by the majority today requires further litigation, and perhaps a trial, to determine the extent to which the damages suffered by plaintiff was related to that Work. In my view, this construction leaves the contractor's liability uncertain in every case and thus completely undermines the purpose of the subrogation waiver clause. * * *

557 N.Y.S.2d at 295–97, 556 N.E.2d 1097 (Alexander, J., dissenting); *See also Trinity Universal Ins. Co.*, 75 S.W.3d 6, 13.

{¶47} For all these reasons, this Court adopts the majority approach to find the plain language of the waiver of subrogation clause within the AIA Contract bars Westfield's claim for damages against Affinia and Gabrysch because the damages to the building were covered by an insurance policy issued to MEROC by Westfield. The trial court did not err in granting summary judgment in favor of Affinia and Gabrysch on this issue.

{¶48} Westfield's two Assignments of Error are overruled.

## CONCLUSION

{¶49} Based on the above analysis, we hold MEROC, and therefore Plaintiff-Appellant Westfield Insurance Group as subrogree, is barred from making a claim for damages against Defendant-Appellee Affinia Development, LLC as contractor and Defendant-Appellee Jan Gabrysch d/b/a Intex as subcontractor by the terms of the AIA Contract to the extent those damages were covered by an insurance policy issued by Westfield.

{¶50} We affirm the judgment of the Knox County Court of Common Pleas to grant summary judgment in favor of Affinia and Gabrysch based on the waiver of subrogation clauses within the AIA Contract.

By: Delaney, P.J.

Gwin, J. and

Farmer, J. concur.

HON. PATRICIA A. DELANEY

HON. W. SCOTT GWIN

HON. SHEILA G. FARMER

PAD:kgb

IN THE COURT OF APPEALS FOR KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

WESTFIELD INSURANCE GROUP          :
                                   :
    Plaintiff - Appellant          :        JUDGMENT ENTRY
                                   :
                                   :
-vs-                               :
                                   :        Case No.    12-CA-2
AFFINIA DEVELOPMENT, LLC, et al.   :
                                   :
    Defendants-Appellees           :
                                   :

For the reasons stated in our accompanying Opinion on file, the judgment of the

Knox County Court of Common Pleas is affirmed.  Costs assessed to Appellant.


_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER